Mr. Chief Justice Watkins delivered the opinion of the Court. The appellee, by his bill in the court below, represented that Obediah C. Hooper, being the owner of a negro girl, proposed to sell her to the complainant, representing to him that she had lost her toes in consequence of their having been frost bitten, but that she was in every other respect sound and without deformity, and that the complainant confiding in those representations, purchased the slave, and gave him his obligation for $330 00, the price agreed on, and that at the same time, and in pursuance of their agreement, said Hooper executed a bill of sale to the complainant, whereby, after reciting the payment of said sum of $330 00, he “ granted, bargained,- and sold said slave to the complainant, and warranted her to be without deformity except her feet, as in and by the said bill of sale, reference thereto being had, would more fully appear.” That said Hooper had assigned said-obligation for $330, to Joseph M. Hooper, who had sued and recovered judgment against the complainant upon it. That soon after the purchase, and before his obligation became due, he discovered,- on examination of the girl, that her legs were ulcerated,that she was- deformed, one of her legs being shorter than the other, and owing to a malformation of the pelvis incapable of bearing children without endangering her life, in consequence of which she was of little or no value. That, without delay, he called upon O. 0. Hooper, informed him the girl was deformed, stating her defects, and at the same time offered to deliver her to him, pay him for her hire and have the obligation cancelled, which Hooper refused; and that complainant then proposed, by way of compromise, to pay him $290, in full of the (Obligation when it became due, which he also refused. The complainant proposed to deliver up the slave to Joseph M. Hooper, and to surrender the bill of sale to be cancelled, and to pay the defendant, of either of them, a reasonable hire for the slave, as the court might direct, and prayed an injunction of the judgment at law on his obligation. The defendant, Obediah C. Hooper, answered, admitting the sale of the negro, but denying that he had represented the girl to be sound and without deformity; but that he had represented her to be in good health and able to work, and alleging affirmatively that the complainant, who was a practicing physician, had attended upon the girl previous to his purchase, had examined her, and must have known of her defects. The answer admitted the execution of the obligation by the complainant for $330 00, and that the defendant at the same time executed to him a bill of sale for the negro, but he denied that it contained any words whereby he had warranted her to be without deformity, except Her feet, and denied that the bill of sale contained any words of warranty whatever, except as to the title. He admits the assignment of the obligation to Joseph M. Hooper, admits that the complainant proposed to pay him $290 for the debt, but denies that the complainant proposed-to return the slave to him and pay for her hire.. Joseph M. Hooper answered that he knew nothing about the terms of the sale of the negro, or what representations Obediah G. Hooper had made, had- no knowledge of the contents of the bill of sale, or whether it contained any warranty of soundness; that he had bought the obligation* of O. C. Hooper, for a valuable consideration, stating it, and without knowing that it was subject to any disability or legal defect, but supposing it had been given in good faith and for a valuable consideration. On the hearing, the court decreed that the sale of the negro be cancelled, that the complainant deliver her up to O. C. Hooper, and that the defendant, Joseph M. Hooper, be perpetually enjoined from enforcing.his judgment at law against the complainant. Several questions might be considered as arising in this case, Hut we deem it material to discuss but one, as according to the view we take of it, that is fatal to the complainant’s claim to relief and decisive of the case. The complainant charges the execution of a bill of sale for the slave, with a warranty of soundness, except as to her feet; and the answer admits the execution of the bill of sale, but denies that it contained any warranty except as to the title. That there was a bill of sale of some kind, is not questioned. It is true the complainant alleges that he purchased the slave, relying on the representations of the seller as to her soundness, which turned out to be false, and the proof shows that she was unsound or deformed, in other respects beside the injury and lameness in her feet, so as to be worth only $100; and there might be some doubt, upon the whole evidence, whether the complainant was not deceived by the representations made to him by the seller, though the proof as to this is not satisfactory. It is apparent, from circumstances, that the unsoundness of the slave was the subject of conversation and negotiation between the parties before the sale was consummated. But the complainant alleges the execution of the bill of sale with a warranty of soundness, excepting as before stated, and he is bound by this allegation. There is no rule of law that ought, upon the ground of public policy, to be better settled than this, that wherever parties have reduced their contract or agreement to writing, the instrument itself is the best and highest evidence of what the contract or agreement really was. No matter what the conversation or representations on either side that preceded it may have been, they are all supposed to be merged in the written instrument, which is to be regarded as the conclusion agreed upon between them. A contract is the law which the parties have prescribed unto themselves, and the object of reducing it to writing is, that a memorial of its terms and provisions may be preserved, and not left to depend, for proof of them, upon the uncertain and imperfect recollection of witnesses. No man’s rights would be safe, and no prudence could guard against fraud, if this were not the law: and the exceptions to it, which ought to be admitted with great caution, are more apparent than real. The rule rests upon the supposition that there is a written contract, as in the case now before the court is conceded by both parties. Where the execution of the contract is denied, or its validity impeached, or it be alleged that the party was induced to enter into it through fraud or misrepresentation, the rule can have no application. True, the complainant here alleges that he was induced to purchase the negro by the representations of the defendant, which turned out to be false. But that representation was in regard to the soundness of the slave, and if, as the complainant alleges, the bill of sale contained a warranty of soundness, it is immaterial what those representations were. They might be material to show deceit or fraud in the defendant if the bill of sale had been executed without any warranty of soundness, though in such case the legal presumption would be, that the contract had been so concluded agreeably to the intention of the parties. But here, the issue raised by the pleadings is, whether the bill of sale contained any warranty of soundness as alleged by the complainant and denied by the defendant. The complainant, in his bill, does not exhibit the bill of sale or annex a copy of it, as he was required by the statutory rule of practice. The defendant, O. C. Hooper, in his answer, and which is responsive to the bill, states, in regard to the bill of sale, that, some three or four months after the sale and delivery of the negro, the complainant came to him, and requested him to take back the bill of sale which he had then executed, and give him a new one, assigning, as a reason for this request, that the first bill of sale was interlined and badly written, so that the clerk could' not record it. That he agreed to do so, provided it contained no stipulation differing from the first one. That the complainant then read it to him, and as read it contained a warranty of soundness, except as to the feet of the girl, which the complainant erased upon the defendant’s representation to him that such was not the agreement, as he well knew, and that the first bill of sale contained no such stipulation. After this correction was made, as defendant supposed, — he not being able to read without his spectacles, — he signed the new bill of sale, and the first one was given up and destroyed. That the bill of sale, so executed in lieu of the first, is the only bill of sale complainant has, and that if it contained any stipulation for warranty of soundness, it was a fraud practiced upon him. On the hearing, the complainant was allowed to prove the loss of the bill of sale by his own affidavit and that of his solicitor, to whom he had intrusted it. These affidavits sufficiently establish the loss of the instrument, so as to let in secondary evidence of its contents; and the enquiry is, whether that evidence is sufficient. The only witnesses introduced as to the contents of the bill of sale, are John Anderson and Sarah Hudson. The former states that he does not recollect of ever hearing it read. This witness was present, as he testifies, when the bill of sale was given. The other witness, Sarah Hudson, in response to the question, what she recollected of the warranty in the bill of sale for the negro, given by O. C. Hooper, to the complainant, when she heard it read, answers, “ I think it read, without any deformity except feet.” This witness, as she testifies, was not present at the sale of the negro, nor does she state who read the bill of sale to her, or whether Hooper was present when it was read. It is to be inferred, from the statement in the record, that the affidavits to prove the loss of the instrument, were admitted solely for that purpose, and ordinarily they would only be admissible to lay the foundation for secondary evidence. But the complainant’s solicitor, in his affidavit, in connection with the loss of the bill of sale, states that he drafted the bill of complaint, and set forth the bill of sale, according to its purport and effect. That he had no knowledge of the execution of the bill of sale, or of the hand-writing of the defendant, Hooper, and could not say whether the instrument since lost, and from which he drafted the bill, was executed by Hooper or not. The words quoted from the allegations in the bill, are all that it contains relative to the warranty in the bill of sale; and regarding this affidavit as evidence of the contents, as well as the loss, it amounts not to proof of the contents, but of the construction which the witness put upon the words of the instrument, in stating its purport and effect. Surely it needs no argument or authority to demonstate the insufficiency of this evidence. It would not be sufficient to establish the contents of the instrument even in a case where the plaintiff’s allegations were not met by a positive denial in the answer. 'The proof is too vague and unsatisfactory to establish a special contract resting in parol; and when a party is allowed to establish the contents of a lost instrument, he must, at least, show, with reasonable certainty, what its terms and provisions were. Without making any question as to grades of secondary evidence, if no copy of the instrument exists, and parol testimony is offered, it ought to be that of a witness who has seen or read the instrument, or is otherwise enabled to speak with some degree of accuracy as to its contents, and identify it as the one executed by •the party to be charged where that is disputed. Else a party relying upon a lost instrument, would often be placed in a better position to take the chances of parol testimony, and the temptation wo'uld be held out to him to destroy or suppress it. Chief Justice Marshall, in the case of Tayloe vs. Riggs, (1 Peter's R. 600,) which was a suit on a lost instrument, said, “When .a written instrument is to be proved, not by itself, but by parol testimony, no vague, uncertain recollection concerning its stipulations, ought to supply the place of the written instrument itself. The substance of the agreement ought to be proved satisfactorily; .and if that cannot be done, the party is in the condition of every other suiter in court, who makes a claim which he cannot support. When parties reduce their contract to writing, the obligations and rights of each are described and limited by the instrument itself. The safety which is expected from them would be much impaired, if they could be established upon uncertain and vague impressions, made by a conversation antecedent to the reduction of the agreement.” So that, in the most favorable view of the case for the complainant, supposing he was resisting payment of his obligation as against O. C. Hooper alone, or suing for a breach of the alleged warranty of soundness, the proof cannot be regarded as sufficient to entitle Mm to relief. Wherefore, in the opinion of the court, the decree appealed-from, ought to be reversed, and the cause remanded to the circuit court, with instructions to dismiss the bill.